DAVID, Justice.
William Parks was convicted of Class A felony dealing in methamphetamine and received an aggregate sentence of forty (40) years. Parks now asks this Court to evaluate the appropriateness of that sentence in light of the nature of the offense and his character under Indiana Appellate Rule 7(B). Reaffirming our authority and our reluctance to grant such a request, in this case our collective judgment has determined that a sentence revision is warranted.
Facts and Procedural History
On the morning of September 15, 2012, William Parks and Amanda Gentry went to the apartment of David Reeve. Parks told Gentry he planned to “try to cook” at the apartment, which Gentry understood to mean cook methamphetamine. (Tr. at 148.) While at Reeve’s apartment, Gentry started smelling strong chemical odors coming from the back room. During the process of cooking, Reeve knocked over a container of chemicals. The chemical smell became significantly more intense, and the windows and doors were opened due to the smell. Jeffrey Deaton was also present at Reeve’s apartment on September 15, 2012, during this time period.
Later that evening, Officer Kurt Sinks and Officer Scott Clark were dispatched to the apartment after receiving reports of a suspected methamphetamine lab. When Officer Sinks approached the apartment he saw the open door and windows and immediately smelled a strong odor coming from *554 the apartment. Upon getting closer, Officer Sinks’ nose and throat started burning, and he was uncertain whether it was safe to enter the premises. He saw Gentry and Deaton sitting inside, declined Gentry’s offer to enter the apartment and instead requested that the two step outside to speak with him. Officer Sinks was informed that another individual was inside, at which point he called inside the apartment asking the individual to exit. The individual identified himself as Parks. Upon learning that the police were there due to a report of a suspected methamphetamine lab, Parks immediately denied that there were any drugs or a methamphetamine lab inside the apartment. Parks was eventually transported to police headquarters, where he waived his Miranda rights and was questioned by Officer Chad Robinson.
During the interview with Officer Robinson, Parks was calm and cooperative. Parks admitted to using and attempting to cook methamphetamine. Parks insisted that he wanted to be honest and expressed his regret in being involved in this incident. He explained that in two attempts to cook, he produced about three-quarters of a gram of methamphetamine each time.
The other officers returned to the apartment with a search warrant. The Indiana State Police methamphetamine team was also present processing the scene. Various items were collected from the scene, including: lithium batteries, various plastic containers, a black trash bag filled with additional plastic containers and funnels, a homemade smoking device, and coffee filters. Indiana State Police Trooper Brock Russell, who has extensive experience in investigating methamphetamine labs, concluded that methamphetamine had been manufactured using the one pot method.[1]
On September 21, 2012, Parks was charged with: Count I, Class A felony conspiracy to commit dealing in methamphetamine; Count II, Class A felony dealing in methamphetamine; Count III, Class C felony illegal drug lab; Count IV, Class B felony possession of methamphetamine; and Count V, Class D felony possession of a syringe. The State dismissed Count V. The jury subsequently found Parks guilty on the remaining four counts and determined that the offenses occurred within one thousand (1,000) feet of a family housing complex. At sentencing Parks apologized for his actions and expressed regret for the hurt he had brought onto his family and community. He acknowledged that his drug addiction has continually caused problems in his life and hoped that he would be able to receive rehabilitation. Several members of Parks’ family filed letters with the court in support of him.
The trial court found the following aggravating factors: Parks’ criminal history as a juvenile and an adult;[2] petitions to revoke probation; failed prior attempts to *555 rehabilitate; and a history of substance abuse. The court also found mitigating factors, which consisted of: Parks’ family support; cooperation with law enforcement; and the emotional support of his children. However, determining that the aggravating factors outweighed the mitigating factors,' the trial court sentenced Parks to forty (40) years for the crime of Class A felony dealing in methamphetamine as charged in Count II.[3] Counts I, III, and IV were merged into Count II. Of the forty-year sentence, t\venty-six (26) years were to be executed in the Indiana Department of Correction, four (4) years were to be executed through Tippecanoe County Community Corrections, and ten (10) years of the sentence were suspended to probation, of which five (5) years were to be supervised probation and five (5) years were to be unsupervised.
Parks initially filed a pro se notice of appeal on June 24, 2013. Parks was appointed appellate counsel, and an amended notice of appeal was filed on August 12, 2013. Parks appealed his sentence under Indiana Appellate Rule 7(B), contending that his sentence was inappropriate given the nature of the offense and his character. The Court of Appeals analyzed the nature of the offense and Parks’ character separately, and ultimately determined that the sentence imposed by the trial court was appropriate. Parks v. State, No. 79A04-1305-CR-259, 2014 WL 2154877 (Ind.Ct. App. May 22, 2014). This Court now grants Parks’ petition to transfer and thereby vacates the Court of Appeals opinion. See Ind. Appellate Rule 58(A).
Standard of Review.
“Appellate review of the merits of a sentence may be sought on the grounds outlined in Appellate Rule 7(B).” Cardwell v. State, 895 N.E.2d 1219, 1223 (Ind.2008). Under Indiana Appellate Rule 7(B), a reviewing court “may revise a sentence authorized by statute if, after due consideration of the trial court’s decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender.” Ind. Appellate Rule 7(B).
Sentence Revision under Indiana Appellate Rule 7(B)
Indiana Appellate Rule 7(B) leaves much to the discretion of appellate courts, but it does not detract from the long-recognized principle that “sentencing is principally a discretionary function in which the trial court’s judgment should receive considerable deference.” Cardwell, 895 N.E.2d at 1222. In conducting review under this standard,-this Court has acknowledged that “reasonable.minds may differ” on the .appropriateness of a sentence based on “our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given ease.” Buchanan v. State, 767 N.E.2d 967, 970 (Ind.2002); Cardwell, 895 N.E.2d at 1224. In light of this understanding, we reluctantly exercise our authority to revise Parks’ sentence.
Conclusion
In our collective judgment, Parks’ sentence is excessive. We believe a *556 more appropriate sentence given the nature of the offense and the character of the defendant would be an aggregate sentence of thirty (30) years, with twenty (20) years to be executed at the Department of Correction, two (2) years to be executed through the Tippecanoe County Community Corrections, and eight (8) years to be suspended to probation, of which four (4) years Parks should be placed on supervised probation and four (4) years on unsupervised probation. This case is remanded to the trial court to impose a sentence of thirty (30) years for Count II dealing in methamphetamine[4] to be served as stated.
RUSH, C.J., and RUCKER, J., concur.
DICKSON, J., dissents with separate opinion in which MASSA, J., joins.

. The one pot method consists of creating your own ammonia and using any vessel, such as a pop bottle or jug. It requires pseu-doephedrine, ammonia nitrate or sulfate from cold packs or lawn fertilizer, lye (various types may be used), lithium from batteries, and camp fuel, starting fluid, or lighter fluid, etc. to each be added to a single bottle. At this point, "the reaction is going to get hot .... This is where it’s highly volatile because ... all those chemiqals that are mixing ... are not intended to be mixed together.” (App. at 94). Pressure can easily build up and a vessel can explode.

. Parks was. adjudicated a delinquent child for: criminal deviate conduct; receiving stolen property; dealing in a look-a-like substance; theft; and possession of marijuana. Parks' adult record includes convictions for: Class A misdemeanor operating while intoxicated; Class D felony battery; and Class D felony possession of chemical reagents and precursors.

. Indiana Code § 35-48-4-1.1 (2008) provides in pertinent part:
(a) A person who: (1) knowingly or intentionally ... manufactures ... methamphetamine ... or (2) possesses, with intent to ... manufacture ... methamphetamine ... commits dealing in methamphetamine, a Class B felony, except ... (b) The offense is a Class A felony if ... (3) the person manufactured, .delivered, or financed the delivery of the drug ... (B) in, on, or within one thousand (1,000) feet of ... (iii) a family housing complex ....

. Recognizing that Counts I, III, and IV were merged into Count II.