## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 22 2016, 6:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Marce Gonzalez, Jr.
Dyer, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

William Strang,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

September 22, 2016

Court of Appeals Case No.
45A03-1602-CR-389

Appeal from the Lake Superior Court

The Honorable Clarence D. Murray, Judge

Trial Court Cause No.
45G02-1202-FA-2

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Defendant, William E. Strang (Strang), appeals his sentence following his conviction for child molesting, a Class B felony, Ind. Code § 35-42-4-3(a) (2008).

We affirm.

## ISSUE

Strang raises one issue on appeal, which we restate as follows: Whether Strang's sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

On February 2, 2012, the State filed an Information, charging Strang with one Count of child molesting, a Class A felony. I.C. § 35-42-4-3(a)(1) (2008). On April 28, 2014, Strang and the State executed a plea agreement, pursuant to which Strang agreed to plead guilty to an amended charge of Class B felony child molesting in exchange for the State's dismissal of the Class A felony. In addition, the plea agreement required Strang to cooperate with the State's case against his co-defendant, Rebecca Hristodoulou (Hristodoulou). The plea agreement left the matter of sentencing to the court's discretion. A Stipulated Factual Basis was attached to the plea agreement, which provided as follows:

1. [Strang], DOB—8/4/1981, . . . is the Defendant . . . .

2. [A.H.], DOB—10/04/2002, is the Victim . . . .

3. That [Hristodoulou] is the co-defendant in this case.

4. That [Hristodoulou] is the biological mother of [A.H.].

5. That from January 1, 2008 through the first week of March, 2010, [Hristodoulou] and [A.H.] were living together in Hobart, [Lake County, Indiana]. [Also] during that time period, [Strang] was the boyfriend of [Hristodoulou] and he was living with her and [A.H.] in Hobart, IN.

6. That on six to ten occasions, while [Strang] and [Hristodoulou] were engaging in sexual activities, [A.H.] would be present, with her mother's full encouragement and consent.

7. That during these occasions, the child, [A.H.,] would be told to put [Strang's] penis in her mouth and [A.H.] did so. Sometimes while [A.H.] did this to [Strang], [Hristodoulou] would touch her own vagina.

8. That the recited facts establish that between January 1, 2008 and March 31, 2010, in the County of Lake, State of Indiana, . . . Strang did perform or submit to deviate sexual conduct with [A.H.], a child under fourteen (14) years of age . . . .

(Appellant's Conf. App. p. 63).

[5]     On April 28, 2014, the trial court conducted a guilty plea hearing, during which Strang confirmed that the statements contained in the Stipulated Factual Basis

are true and correct statements of what occurred. On January 21, 2016,[1] the trial court accepted Strang's guilty plea and conducted a sentencing hearing. In determining a sentence, the trial court identified several aggravating circumstances: Strang's criminal history; the "profoundly disturbing" nature and circumstances of the crime, including the fact that Strang was in a position of trust with the victim; and that the crime "demonstrated an epidemiological risk of transmission of HIV." (Appellant's App. p. 17). The trial court found that Strang's admission of guilt constituted a mitigating circumstance, although not a significant one in light of the fact that Strang "received a significant benefit from the plea agreement and the evidence strongly favored conviction had the case gone to trial." (Appellant's App. p. 18). The trial court concluded that the aggravating factors outweighed the mitigating factors and ordered Strang to serve nineteen years, fully executed, in the Indiana Department of Correction.

[6] Strang now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[7] Strang claims that his sentence is inappropriate. A Class B felony is punishable by a term of imprisonment "between six (6) and twenty (20) years, with the advisory sentence being ten (10) years." I.C. § 35-50-2-5 (2008). In this case,

---

[1] It appears that the substantial delay between the execution of the plea agreement and sentencing is due to the fact that Strang agreed to waive sentencing until after Hristodoulou's case was disposed of by plea agreement, trial, or dismissal. However, it appears that at the time Strang was sentenced, Hristodoulou was being treated in a nursing home, and the charges against her remained pending.

the trial court imposed a nineteen-year sentence, and it is a "long-recognized principle that 'sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). Nevertheless, even where, as here, a trial court imposes a sentence that is permissible by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[8] The purpose of sentence review under Appellate Rule 7(B) is "to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. On review, we focus on "the length of the aggregate sentence and how it is to be served." *Id.* Strang bears the burden of persuading our court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014). Strang requests that we revise his sentence to a term of fourteen years.

[9] Looking first to the nature of the offense, Strang concedes that his conduct was "repugnant." (Appellant's Br. p. 5). Despite agreeing that the nature of his

offense warrants an aggravated sentence, Strang disagrees with the trial court's characterization of the crime as one of "the worst of the worst" and therefore seeks a reduced sentence. (Tr. p. 27). The nature of this case is, indeed, disturbing. While engaging in sexual acts with Hristodoulou, the mother of the victim, Strang compelled A.H. to perform oral sex on him. This conduct occurred on at least six to ten occasions while Strang was living with Hristodoulou and A.H. Thus, Strang repeatedly violated a position of trust with A.H. At the time, A.H. was between five and seven years old.

[10] Turning to the character of the offender, Strang argues that he "accepted responsibility for the offense early on in the proceedings," and "the State sincerely believed that Strang would cooperate and testify against the co-defendant." (Appellant's Br. p. 6). We find that it is a redeemable quality that Strang accepted responsibility for his crime. By pleading guilty, he spared A.H. the burden of enduring a trial. However, as the trial court noted, Strang's guilty plea was also self-serving in light of the reduced charge and the substantial evidence against him. We note that Strang is a father of three children for whom he has failed to maintain his court-ordered support payments. Additionally, Strang has a fairly significant criminal history, including two juvenile misdemeanor adjudications for battery and conversion and, as an adult, convictions for misdemeanor domestic battery (twice), felony criminal recklessness, misdemeanor possession of paraphernalia, and misdemeanor invasion of privacy. In total, Strang has had sixteen "contacts" with law enforcement, and, at the time of sentencing, had two active arrest warrants out

of Gary City Court.  (Appellant's Conf. App. p. 55).  Despite being afforded leniency in the past with suspended sentences and probation, Strang has had his probation revoked on multiple occasions.  Moreover, the record reveals that Strang has regularly abused alcohol and drugs, including cocaine and marijuana, since he was a teenager.  Thus, it is evident that Strang has refused to lead a law-abiding life, and his prior interactions with the criminal justice system have been insufficient to deter him from committing additional crimes.

[11] Strang also contends that appellate revision of his sentence is required based on the following remarks, which were made by the trial court during the sentencing hearing:

> . . . Strang, as [the] defense correctly points out, has been in custody for quite some time, about four years.  This issue came up last week, as a matter of fact, in another case.  I believe that the judges, all judges, owe a certain level of accountability to the public for the sentences that we impose.  I have always made a serious effort to explain my sentences in detail, perhaps more detail than I need to.  But I recognize that these cases are reported in the newspapers, and I think it's important that the general public understand what the cases are about; and to the extent possible[,] [w]hat the judge's thought processes are.
>
> I make this comment because the previous case that involved a person who had been in jail for about the same amount of time, it was erroneously reported in the newspaper that I was not in favor of anyone serving more than four years in jail.  Now that statement standing in isolation certainly suggests that I've taken leave of my senses.  I can assure you I have not.  Had it been reported in the proper context, it would have been clear to anyone who was present or any reader of the paper that

my comments had to do with the programs that are available in prison. And the comment that I made was that it was brutal for anyone to spend four years in the Lake County Jail, without going to trial, because they either need to go to trial and be acquitted or convicted. And if convicted, they go on to prison, and they can avail themselves of the various programs that are available in prison. But certainly to indicate in that particular case that the Judge was not in favor of anyone serving more than four years in jail, I believe, was an irresponsible journalist at best. And I make that statement because it pissed me off. I don't like being misquoted. And I think the newspapers have an obligation to report the truth at all times.

Also these cases oftentimes get continued. I want to make it clear that there is a big difference between the reset of trials and the parties move to vacate trial settings and the Judge grants that motion, the trial settings are no more. They are gone. So there is nothing to continue in terms of resetting a trial. The case is continued for a further proceedings date, but that is not the resetting of the trial. If the trial is vacated, then that trial does not exist any more. It has to be reset for trial.

I have never reset trials in my judicial career on any case, I believe, more than four or five times in the same trial, certainly not as what was reported, nineteen times. It was not a resetting trial for that period.

Now, I make these comments because certainly the newspapers have a power of pen, and I have the bully pulpit when I want to use it and I'm using it because I think these things need to be said on my behalf and the other judges. We are accountable. And when we make mistakes, certainly we deserve every criticism that we get. And occasionally we do make mistakes. But personally I ask only for fair reporting of these cases so that the general public is clear as to what the judges are doing that they voted for.

So having said that, I hope that any coverage of this case will be factual. I have spoken the truth, so I tend to doubt that it will be reported in the way that I've said it.

(Tr. pp. 28-30). According to Strang, this "diatribe" is "a classic example of a court reacting to pressure and local clamor" which "undermine[s] confidence in the trial court's reasoning." (Appellant's Br. pp. 6-7). However, we find that the trial court's comments were directed at members of the media with the intent to express frustration regarding the accuracy of their reporting on the court's cases. Thus, we agree with the State that these remarks by the trial court "do not implicate the nature of the offense and character of the offender, so they need not be considered further." (Appellee's Br. p. 11). Considering the nature of the offense and Strang's character, we cannot say that his nineteen-year sentence is inappropriate.

## CONCLUSION

[12] Based on the foregoing, we conclude that Strang's sentence is not inappropriate.

[13] Affirmed.

[14] Bailey, J. and Barnes, J. concur