## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 16 2017, 11:15 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stanley L. Campbell
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Scott K. Jordan, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 16, 2017 <br><br> Court of Appeals Case No. <br> 02A05-1612-CR-2780 <br><br> Appeal from the Allen Superior Court <br><br> The Honorable Frances C. Gull, Judge <br><br> Trial Court Cause No. <br> 02D06-1607-MR-2 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Scott K. Jordan (Jordan), appeals his sentence following his conviction for murder, a felony, Ind. Code § 35-42-1-1(1).

We affirm.

# ISSUE

Jordan raises one issue on appeal, which we restate as follows: Whether Jordan's sentence is inappropriate in light of the nature of the offense and his character.

# FACTS AND PROCEDURAL HISTORY[1]

In March of 2016, the family of Jacqueline Vanduyn (Vanduyn) contacted the Fort Wayne Police Department (FWPD) to report that Vanduyn, a resident of Fort Wayne, Allen County, Indiana, was missing. On April 19, 2016, the FWPD interviewed the property manager at Vanduyn's apartment complex, who stated that she had previously been informed of the missing person's report by Vanduyn's family. As a result of the family's inquiry, the property manager had gone to Vanduyn's apartment to locate her. However, it was Vanduyn's boyfriend, Jordan, who answered the door and indicated that Vanduyn was at

---

[1] Both Jordan and the State have relied upon the Probable Cause Affidavit to set forth a recitation of the facts; we now do the same. The Probable Cause Affidavit, which was not introduced as evidence but was attached to the Pre-Sentence Investigation Report and included as part of the record, has been included in the confidential version of Jordan's appendix. To the extent that it contains information that is excluded from public access, we note that discussion of the contents therein is essential to the resolution of this matter. Ind. Administrative Rule 9(G)(7)(a)(ii)(c).

work.  Because Jordan was not listed on the lease and was in possession of the sole key issued for Vanduyn's apartment, the property manager ordered him to leave the apartment and immediately had the lock changed.  The property manager further explained to the FWPD that she received a money order for Vanduyn's rent on April 1, 2016, but the signature on the money order differed from Vanduyn's signature on the lease and prior rent checks.

[5]  The FWPD subsequently interviewed Jordan, who was incarcerated at the Allen County Jail following his recent arrest for a robbery at a pharmacy. Jordan stated that Vanduyn had kicked him out of her apartment in March of 2016, at which time she had also moved out.  However, Jordan claimed that Vanduyn instructed him to pay her rent on April 1, so he obtained a money order, signed her name, and deposited it at the apartment complex's office.  The FWPD also reviewed surveillance footage from outside Vanduyn's apartment complex.  Although Vanduyn had a consistent routine in "coming and going from the apartment daily," after she entered her apartment on March 6, 2016, she was not seen again.  (Appellant's Conf. App. Vol. II, p. 11).

[6]  On April 25, 2016, the FWPD obtained a search warrant for Vanduyn's apartment.  Upon opening the door, officers detected the odor of a decaying corpse.  In a closet, the officers discovered a black plastic bag, which "appeared to have blood coming out of it."  (Appellant's Conf. App. Vol. II, p. 11).  Once the coroner arrived, the bag was opened, and Vanduyn's body was observed to be "face down inside."  (Appellant's Conf. App. Vol. II, p. 11).  It appeared that Vanduyn had been "deceased for some time and her legs were tied together and

her mouth was taped shut." (Appellant's Conf. App. Vol. II, p. 11). In addition, Vanduyn's body was covered with numerous water bottles, and officers found more than twenty frozen water bottles in the freezer. The officers deduced that "someone had been exchanging frozen bottles of water on [Vanduyn's body] in an attempt to keep her cold, thus decreasing the decomposition of the body." (Appellant's Conf. App. Vol. II, p. 11).

[7] On May 3, 2016, Vivian Jordan, a resident of Lakeland, Florida, contacted the Allen County Sheriff's Department to report that she had received a letter from her son, Jordan, in which he had confessed to killing Vanduyn. The letter was forwarded to the FWPD. Upon review of the letter, the FWPD discovered that Jordan had admitted that he caused Vanduyn's death by "getting on top of her and choking the life outta her" and added that he "got so mad that I killed her." (Appellant's Conf. App. Vol. II, p. 12). On June 23, 2016, Vanduyn's autopsy results established that the cause of her death "was asphyxia due to strangulation and suffocation." (Appellant's Conf. App. Vol. II, p. 12).

[8] On July 8, 2016, the State filed an Information, charging Jordan with Count I, murder, a felony, I.C. § 35-42-1-1(1); and Count II, altering the scene of death of a person, a Level 6 felony, I.C. § 36-2-14-17(b). At a hearing on October 14, 2016, Jordan pled guilty to the murder charge without the benefit of a plea agreement. At the State's request, the trial court dismissed Count II of the Information concerning Jordan's alteration of the crime scene. With respect to a factual basis for the plea, Jordan simply admitted that sometime between March 6, 2016, and April 19, 2016, during which period he lived in Vanduyn's

apartment, he "knowingly or intentionally killed" her. (Tr. Vol. I, p. 10). The trial court accepted Jordan's guilty plea and entered a judgment of conviction. On November 8, 2016, the trial court held a sentencing hearing and ordered Jordan to execute sixty-five years in the Indiana Department of Correction, with said sentence to run consecutive to Jordan's sentences in other cases.

[9] Jordan now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Jordan claims that his sixty-five-year sentence is inappropriate. It is well established that "'sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). Yet, even if a trial court imposes a sentence that is authorized by statute, our court may revise the sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[11] Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage

done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. On review, we focus on "the length of the aggregate sentence and how it is to be served." *Id.* Jordan bears the burden of persuading this court that his sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[12] With respect to the nature of the offense, "the advisory sentence is the starting point [that] our legislature has selected as [an] appropriate sentence for the crime committed." *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009) (citing *Anglemyer v. State*, 868 N.E.2d 482, 494, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007)). The advisory sentence for murder is fifty-five years, with a maximum sentence of sixty-five years and a minimum term of forty-five years. I.C. § 35-50-2-3(a). Here, the trial court, in imposing the maximum sentence permitted by statute, described the circumstances of the murder as "[e]xtraordinarily egregious" and "reprehensible." (Tr. Vol. II, p. 10). On appeal, Jordan asserts that his strangulation of Vanduyn is no more egregious than any other murder, such that the trial court should have ordered the advisory term of fifty-five years.

[13] The record reveals that, in an apparent fit of anger, Jordan strangled and suffocated Vanduyn. Whether done before or after the murder, Jordan also bound Vanduyn's legs and taped her mouth shut. He then stuffed her into a plastic bag, which he stowed in a closet in Vanduyn's apartment. For several weeks thereafter, Jordan used frozen water bottles in an effort to keep Vanduyn's body from decomposing while he continued to live in her apartment

and present a façade to Vanduyn's family and others that she was simply temporarily unavailable. To the extent that Jordan now argues that his conduct following Vanduyn's murder (*i.e.*, his efforts to conceal her death) is irrelevant as a consideration for his murder sentence in light of the fact that his charge for altering the crime scene was dismissed at the time of his guilty plea, we note that "we may look to any factors appearing in the record" in considering the appropriateness of a sentence. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). [2] "The nature of the offenses is found in the details and circumstances of the commission of the offenses and the defendant's participation." *Id.* Notwithstanding that Jordan was not specifically convicted of altering the crime scene as initially charged, the circumstances surrounding the commission of the murder are highly relevant to the nature of the offense as a whole.

[14]     As to Jordan's character, the record reveals nothing particularly redeemable that would warrant anything less than the maximum sentence imposed by the trial court. Although Jordan pled guilty without the benefit of a plea agreement, the trial court found that Jordan had never expressed any genuine remorse for his conduct. Moreover, Jordan's extensive criminal history is

---

[2] Jordan also appears to assert that the trial court improperly considered his post-murder conduct as an aggravating factor in his sentence for murder. The consideration of aggravating and mitigating circumstances is a matter left to the trial court's discretion. *Anglemyer*, 868 N.E.2d at 489-91. As our court has previously stated, "inappropriate sentence and abuse of discretion claims are to be analyzed separately." *King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (citing *Anglemyer*, 868 N.E.2d at 491). Accordingly, because Jordan has failed to present a separate, cogent argument with the appropriate standard of review regarding the trial court's sentencing discretion, we find that he has waived the issue for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a)-(b).

illustrative of his poor character. Dating back to 1990, when he was just nineteen years old, Jordan's criminal record includes nine misdemeanor convictions and sixteen felony convictions, which he accumulated in three different states. Among others, Jordan's convictions include misdemeanors for battery, resisting arrest, conversion, and criminal trespass; and felonies for burglary, robbery, theft, forgery, and selling methamphetamine. Jordan has had his probation revoked on four occasions and has had a suspended sentence modified. Despite claiming substance abuse issues, Jordan has never participated in substance abuse treatment even though he has had ample opportunity to do so while incarcerated. Furthermore, according to the Pre-Sentence Investigation Report, Jordan had been unemployed for several years and sold illegal drugs to earn money. Thus, it is clear that all prior efforts to rehabilitate Jordan and persuade him to lead a law-abiding life have failed. As the trial court aptly noted, Jordan will likely spend the rest of his life in prison as a result of his own poor choices. Accordingly, we cannot say that Jordan's sentence is inappropriate.

## CONCLUSION

Based on the foregoing, we conclude that Jordan's sixty-five-year sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed.

Najam, J. and Bradford, J. concur