## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jennifer A. Joas
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kayla M. Youngs,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 25, 2017

Court of Appeals Case No.
39A01-1701-CR-116

Appeal from the Jefferson Circuit Court

The Honorable Darrell M. Auxier, Judge

Trial Court Cause No.
39C01-1602-F2-187

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Kayla M. Youngs (Youngs), appeals her sentence following her open guilty plea to two Counts of dealing in a narcotic drug, Level 5 felonies, Ind. Code § 35-48-4-1(a)(1)(C).

We affirm.

# ISSUES

Youngs raises two issues on appeal, which we restate as follows:

(1) Whether the trial court abused its sentencing discretion; and

(2) Whether Youngs' sentence is inappropriate in light of the nature of the offenses and her character.

# FACTS AND PROCEDURAL HISTORY

On September 30, 2015, and October 27, 2015, the Jefferson County Sheriff's Department used a confidential informant to purchase Hydrocodone from Youngs. During both controlled transactions, Young supplied the confidential informant with thirty Hydrocodone pills in exchange for $210.00 and $200.00, respectively. The total weight of the Hydrocodone pills was 12 grams from the first transaction and 12.63 grams from the second transaction.

On February 11, 2016, the State filed an Information, charging Youngs with two Counts of dealing in a narcotic drug as Level 2 felonies, I.C. § 35-48-4-1(a)(1)(C),(e)(1). On March 30, 2016, the trial court reduced Youngs' bond and conditioned her pre-trial release on participation in the Jefferson County Pre-

Trial Release Program through Jefferson County Community Corrections, with an additional specific requirement of weekly drug screens. On November 14, 2016, the Pre-Trial Coordinator of Jefferson County Community Corrections notified the trial court that Youngs was not in compliance with her pre-trial release conditions. In particular, the Pre-Trial Coordinator advised that Youngs had missed multiple appointments and had tested positive for methamphetamine in an instant drug screen. When the Pre-Trial Coordinator attempted to verify the result of Youngs' drug screen with a lab test, Youngs failed to provide the urine sample as required.

[6] On December 2, 2016, Youngs and the State executed a plea agreement, pursuant to which Youngs agreed to plead guilty to two reduced charges of dealing in a narcotic drug as Level 5 felonies. The State further agreed that it would dismiss Youngs' pending charge for check deception in a separate case. The plea agreement left sentencing to the matter of the trial court. The same day, the trial court conducted a hearing on Youngs' guilty plea. After a factual basis was presented to the trial court, the trial court heard evidence and argument regarding sentencing. Youngs testified that, after more than a decade of sobriety following a methamphetamine addiction, she had relapsed and was selling her prescription pain medicine in order to support her methamphetamine habit. The trial court took both the plea and the sentence under advisement. On January 4, 2017, the trial court accepted Youngs' guilty plea and entered a judgment of conviction for two Counts of dealing in a narcotic drug as Level 5 felonies. The trial court ordered Youngs to serve

concurrent sentences of three years in the Indiana Department of Correction (DOC). The trial court further recommended Incarceration with a Purpose and requested the DOC to place Youngs at the Madison Correctional Facility with further enrollment in the GRIP Therapeutic Community Program. Following her completion of the GRIP Therapeutic Community Program, the trial court stated that it would "consider modification of [Youngs' sentence] to probation supervised by Jefferson County Community Corrections." (Appellant's Conf. App. Vol. II, p. 109).

Youngs now appeals. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Abuse of Sentencing Discretion*

Youngs claims that the trial court abused its discretion in sentencing her to concurrent three-year terms in the DOC. Sentencing decisions are a matter of trial court discretion and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490, *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). A trial court abuses its discretion if its decision "is 'clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Anglemyer v. State*, 868 N.E.2d 482, 490 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007).

A trial court "may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors." *Id.* at 489.

However, the trial court may identify factors in mitigation and aggravation, and if it "'finds' the existence of 'aggravating circumstances or mitigating circumstances' then the trial court is required to give 'a statement of the court's reasons for selecting the sentence that it imposes.'" *Id.* at 490 (quoting I.C. § 35-38-1-3(3)). Furthermore, the supreme court held in *Anglemyer* that "Indiana trial courts are required to enter sentencing statements whenever imposing sentence for a felony offense." *Id.* Because sentencing statements historically "guarded against arbitrary and capricious sentencing" and "provided an adequate basis for appellate review," the supreme court confirmed that such a

> statement must include a reasonably detailed recitation of the trial court's reasons for imposing a particular sentence. If the recitation includes a finding of aggravating or mitigating circumstances, then the statement must identify all significant mitigating and aggravating circumstances and explain why each circumstance has been determined to be mitigating or aggravating.

*Id.* at 489-90.

[10] Upon appellate review, a trial court may be found to have abused its discretion by failing to enter a sentencing statement at all; entering a sentencing statement that explains its reasons for imposing a sentence where such reasons are not supported by the record or are improper as a matter of law; or entering a sentencing statement that omits reasons which are clearly supported by the record and advanced for consideration. *Id.* at 490-91. A trial court may not be said to have abused its discretion by failing to properly weigh aggravating and

mitigating factors. *Id.* at 491. If we find that the trial court has abused its discretion, our court will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.*

Indiana Code section 35-50-2-6(b) provides that "[a] person who commits a Level 5 felony . . . shall be imprisoned for a fixed term of between one (1) and six (6) years, with the advisory sentence being three (3) years." In the present case, the trial court imposed the advisory term for both Counts, to be served concurrently. Youngs challenges her sentence on two grounds: (1) that the trial court failed to set forth a recitation of its reasons for imposing the particular sentence, and (2) that the trial court failed to find mitigating circumstances that are clearly supported by the record and were advanced for consideration during the sentencing hearing. We address each issue in turn.

### A. *Sentencing Statement*

Youngs contends that neither the trial court's oral sentencing statement nor its written sentencing order adequately explain the trial court's rationale for ordering a three-year executed sentence. The trial court made no remarks concerning any finding of aggravating or mitigating circumstances during sentencing; rather, after announcing its decision to impose the advisory term on both Counts, the trial court simply addressed Youngs as follows:

> . . . I don't want to send you to the [DOC] and just have you sit
> up there. I'm putting you into a program that's very intensive
> and which I feel is designed to prevent this from ever happening

again.  Now should you get up there, and if they do not place you in the program for any reason that's not your fault, please let me know as soon as possible[.]  I don't want you just warehoused up there.  If you can't get into the program, I'm going to come back and take another look at your case.  But that—now if you don't get in the program because of your own fault, that's not going to do you any good, but uh—I just feel that—I feel that you need some intensive treatment to make sure that this does not happen again and that you have a—a full and happy life, not one haunted by drug abuse.

(Tr. p. 77).  Youngs acknowledges that this statement "depicts reasoning for recommending the GRIP program but does not provide reasoning for the [c]ourt's three[-]year sentence."  (Appellant's Br. p. 11).

[13]  During the sentencing portion of the hearing, Young asked the trial court to impose "a three-year sentence on each count to run concurrently . . . and we're requesting that be suspended to reporting probation with Community Corrections as an additional term."  (Tr. p. 68).  As the State points out, the invited error doctrine precludes Youngs from challenging the term of her sentence on appeal based on the fact that she specifically requested the term imposed.  *See Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005) ("[A] party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct.").  As to the method in which the trial court ordered Youngs to serve her sentence, we find that the trial court's explanation more than adequately sets forth its reasoning for imposing an executed sentence rather than the suspended term Youngs requested.  The evidence elicited during the sentencing hearing establishes that Youngs has a

history of methamphetamine abuse, and, despite a prolonged period of sobriety, she suffered a relapse that ultimately led to the current convictions. In its statement, the trial court indicated that it was not ordering Youngs commitment to the DOC simply for her to be "warehoused" there. (Tr. p. 77). Rather, the trial court made it abundantly clear that it imposed the executed sentence in order to ensure that Youngs could participate in an "intensive" substance abuse treatment program to prevent her from relapsing in the future. (Tr. p. 77). Upon Youngs' successful completion of the recommended program, the trial court indicated its intent to modify her sentence to probation.

[14] Furthermore, we note that in 2014 (*i.e.*, seven years after *Anglemyer* was decided), the Indiana General Assembly amended Indiana Code section 35-38-1-1.3 such that it now stipulates that "[a]fter a court has pronounced a sentence for a felony conviction, the court shall issue a statement of the court's reasons for selecting the sentence that it imposes *unless the court imposes the advisory sentence for the felony*." (Emphasis added).[1] Based on the plain language of this statute, it is apparent that the trial court was not required to issue a sentencing statement after pronouncing sentence because it imposed the advisory term. Therefore, we cannot say that the trial court abused its discretion by failing to enter an adequate sentencing statement.

---

[1] *See* Ind. P.L. 168-2014 § 54 (adding the clause "unless the court imposes the advisory sentence for the felony" to the existing statutory language that required a sentencing statement for felony convictions).

## B. *Mitigating Circumstances*

[15] Youngs next asserts that the trial court abused its discretion by failing to identify the multiple mitigating circumstances that she proffered for consideration during the sentencing hearing. "The finding of mitigating circumstances is not mandatory but is within the discretion of the trial court." *Sandleben v. State*, 29 N.E.3d 126, 135 (Ind. Ct. App. 2015), *trans. denied*. A trial court is under no obligation "to accept the defendant's argument as to what constitutes a mitigating factor"; nor is the trial court "required to give the same weight to a proffered mitigating factor as does the defendant." *Id.* at 135-36. A defendant alleging "that the trial court failed to identify or find a mitigating factor" is required "to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 136.

[16] Indiana Code section 35-38-1-7.1(b) sets forth a non-exhaustive list of factors that the trial court may consider as mitigating circumstances in formulating an appropriate sentence. Accordingly, Youngs argued that the trial court should have taken into account that she "has little to no criminal history"; that she is likely to respond affirmatively to probation; that she "is a person of good character" and unlikely to reoffend; that she agreed to make restitution to the Jefferson County Sheriff's Department for the money expended in conducting the controlled drug transactions; and that imprisonment will result in undue hardship to her two children, for whom she is the primary caregiver. *See* I.C. § 35-38-1-7.1(b)(6)-(10); (Appellant's Br. p. 11). Youngs also proffered that she saved the State time and resources by pleading guilty. The trial court did not

mention the mitigating circumstances tendered by Young in rendering its sentence. According to Youngs, based on these factors, she "should have received a mitigated sentence, a partially suspended sentence, or a fully suspended sentence." (Appellant's Br. p. 12).

[17] Notwithstanding whether there is significant and clearly supported mitigating evidence such that the trial court abused its discretion by failing to take the proffered mitigating factors into consideration, we decline to remand for resentencing. Here, the trial court imposed the advisory term of years requested by Youngs and was adamant that Youngs receive substance abuse treatment through the GRIP Therapeutic Community Program. Subsequent to her completion of treatment, the trial court advised Youngs to apply for a sentence modification, through which the trial court would suspend Young's sentence as she originally requested. Thus, even if the trial court had explicitly accepted the tendered circumstances as mitigating, it clearly would have imposed the same sentence. *See Anglemyer*, 868 N.E.2d at 491.

## II. *Appropriateness of Sentence*

[18] Although the trial court imposed a sentence that is statutorily permissible, Youngs nevertheless asks our court to exercise its discretionary authority under Indiana Appellate Rule 7(B) "to revise her sentence as the [c]ourt deems proper." (Appellant's Br. p. 18). As we previously indicated, "'sentencing is principally a discretionary function in which the trial court's judgment should receive considerable deference.'" *Parks v. State*, 22 N.E.3d 552, 555 (Ind. 2014) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008)). However, our

court may revise a sentence if, "after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B).

[19] Appellate Rule 7(B) provides for sentence review in an "attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell*, 895 N.E.2d at 1225. Ultimately, "whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Our court focuses on "the length of the aggregate sentence and how it is to be served." *Id.* Youngs bears the burden of persuading this court that her sentence is inappropriate. *Corbally v. State*, 5 N.E.3d 463, 471 (Ind. Ct. App. 2014).

[20] With respect to the nature of the offense, "the advisory sentence is the starting point [that] our legislature has selected as [an] appropriate sentence for the crime committed." *Richardson v. State*, 906 N.E.2d 241, 247 (Ind. Ct. App. 2009). Youngs was sentenced to the advisory term for both of her Level 5 felonies, with the sentences to run concurrently. I.C. § 35-50-2-6(b). The record reveals nothing particularly noteworthy about Youngs' offenses: on two separate occasions, she sold her prescription Hydrocodone pills to a confidential informant as a means of financing her methamphetamine addiction.

[21] Turning to the character of the offender, we agree with Youngs that she has numerous redeeming qualities. Her criminal history is minimal, with the pre-sentence investigation report indicating only a 2012 charge for Class A misdemeanor check deception, which was dismissed in conjunction with her current plea agreement. Youngs testified during the sentencing hearing that she first used methamphetamine at age seventeen and thereafter continued to use it "every once[]in[]a[]while." (Tr. p. 47). After moving to Indiana in 2003, Youngs did not use methamphetamine for twelve years and appears to have largely led a law-abiding life during this period. Youngs has been married for more than fifteen years, and she and her husband are the parents of two teenagers. When Youngs relapsed in October of 2015, she was using methamphetamine about three times per week. Her husband testified during the sentencing hearing that she managed to keep her drug use hidden from him and their children up until she was arrested. Youngs is an involved parent and, as her employer described, is "very smart, and she's got a great attitude, and she has the capacity to be a . . . top employee." (Tr. p. 40).

[22] Despite the unremarkable nature of the offenses and Youngs' positive character, we cannot say that a revised sentence is warranted. Rather, we agree with the trial court's measured action as it is responsive to Youngs' criminal conduct and her apparent need for substance abuse treatment in a controlled setting. Although Youngs complied to an extent with the conditions of her pre-trial release, such as by obtaining employment and passing nearly all of her drug screens, she eventually stopped attending her appointments. Furthermore,

when an instant drug screen was positive for methamphetamine in August of 2016, Youngs "panicked" and left the testing facility without providing a urine sample to confirm the oral drug test. (Tr. p. 54).[2] Taking into account that she relapsed after a substantial period of sobriety, in addition to her trouble complying with the pre-trial release conditions, it is clear that Youngs needs a treatment program that will hold her accountable and ensure that she eventually has "a full and happy life, not one haunted by drug abuse." (Tr. p. 77). Accordingly, the trial court's three-year sentence to the DOC, with the specification that the trial court will consider sentence modification to probation upon Youngs' completion of the GRIP Therapeutic Community Program, is not inappropriate.

## CONCLUSION

[23] Based on the foregoing, we conclude that the trial court acted within its discretion in sentencing Youngs, and her sentence is not inappropriate in light of the nature of the offenses and her character.

[24] Affirmed.

[25] Najam, J. and Bradford, J. concur

---

[2] We do acknowledge that on one other occasion, Youngs had an oral drug screen that yielded a positive result for methamphetamine which was subsequently shown to be negative by the urine confirmation test. As the Pre-Trial Coordinator explained, the instant oral tests "are more sensitive to different things, and that's why we send them to a lab to see if it's medication or uh—what type of medication it could be. So the—the reason we send them to the lab is so we can have a breakdown of what is actually taken." (Tr. p. 21).